RECEIVED
UNITED STATES MARSHAL
2019 JUL 23 PM 12: 45
SOUTHERN DIST.
ILLINOIS
E. ST. LOUIS, IL

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA, )
)
Plaintiff, )
)
vs. ) CASE NUMBER: 19-MJ-7084-MAB
)
JOSE LUIS MONDRAGON-SANCHEZ, )  1:19-mJ-147 EPG
)
Defendant. )

## WARRANT FOR ARREST

TO:   The United States Marshal and any Authorized United States Officer

YOU ARE HEREBY COMMANDED to arrest JOSE LUIS MONDRAGON-SANCHEZ, and bring him or her forthwith to the nearest Magistrate Judge to answer a complaint charging him with conspiracy to distribute and possess with intent to distribute methamphetamine in violation of Title 21, United States Code, Section 846.

| MARK A. BEATTY | United States Magistrate Judge |
|---|---|
| Name of Issuing Officer | Title of Issuing Officer |
| *Mark A. Beatty* 2019.07.23 11:49:15 -05'00' | 7/23/2019 at East St. Louis, IL |
| Signature of Issuing Officer | Date and Location: |
| /s/ Alexandra Francis | |
| (By) Deputy Clerk | |

FILED
JUL 24 2019
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY CLERK

Bail fixed at $_____ by _____
                              Name of Judicial Officer

10

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CASE NUMBER: 19-MJ-7084-MAB |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **FILED UNDER SEAL** |
| JOSE LUIS MONDRAGON-SANCHEZ, ) | |
| OTTO RAUL TEJEDA, ) | |
| JOSEPH OTZOY, ) | |
| ) | |
| Defendants. ) | |

## CRIMINAL COMPLAINT

I, Ryan Bandy, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief:

### COUNT 1

**CONSPIRACY TO DISTRIBUTE AND POSSESS WITH INTENT TO DISTRIBUTE A CONTROLLED SUBSTANCE: METHAMPHETAMINE**

Between June 25, 2019 and July 22, 2019, in Madison County, Illinois within the Southern District of Illinois, and elsewhere,

**JOSE LUIS MONDRAGON-SANCHEZ,
OTTO RAUL TEJEDA, and
JOSEPH OTZOY,**

defendants herein, knowingly and intentionally combined, conspired, and agreed with each other and with other persons known and unknown to the Grand Jury, to knowingly and intentionally distribute and possess with intent to distribute a controlled substance, to wit, methamphetamine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1); all in violation of Title 21, United States Code, Section 846.

The total amount of methamphetamine, a Schedule II Controlled Substance, involved in

1.

the conspiracy that was reasonably foreseeable to the Defendants was 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A)(viii), and 846.

## AFFIDAVIT

I, Ryan M. Bandy, have been assigned to the Drug Enforcement Administration's Fairview Heights Resident Office, as a Special Agent since September 2016. Prior to becoming a Special Agent, I was employed as a police officer at the Southern Illinois University Edwardsville Police Department for three years and eight months. As part of my Drug Enforcement Administration (DEA) Academy training, I was trained in the identification of narcotics and narcotics investigations involving the transportation of controlled substances. During my tenure as a Special Agent, I have participated in numerous narcotics investigations involving the manufacture, transportation, and distribution of controlled substances. These investigations have resulted in the seizure of controlled substances and proceeds from the sale of controlled substances as well as arrests and convictions of drug traffickers. I am familiar with and have been trained in normal methods of investigation, including, but not limited to, visual surveillance, questioning of witnesses, the use of search and arrest warrants, the use of informants, the use of pen registers, the utilization of undercover agents and the use of court-authorized wire intercepts.

1. This Affidavit contains information from two Confidential Sources. Both have prior felony criminal records. Confidential Source #1 (CS#1) is cooperating for possible judicial consideration. CS#1 has provided information that has led to the seizure of drugs and money. Confidential Source #2 (CS#2) is cooperating for the possibility of financial compensation. I have not found any of CS#2's information to be untruthful or deceiving. CS#2 has provided information that has led to the seizures of drugs and money in the past. Agents have corroborated

2

Case 1:19-mj-00147-EPG   Document 1   Filed 07/24/19   Page 4 of 7
Case 3:19-mj-07084-MAB   Document 1   Filed 07/23/19   Page 3 of 6   PageID 3

statements made by CS#1 and CS#2 through consensual recordings and telephone toll records. For these reasons, I find both Confidential Sources to be reliable.

2. In January 2019, CS#1 gave agents information about Jose Mondragon-Sanchez, a poly-drug dealer based out of California. CS#1 said he/she has transported kilograms of cocaine and other drugs for Mondragon-Sanchez throughout the United States. These activities took place prior to CS#1's cooperation with law enforcement. In January 2019 and February 2019, CS#1 believed Mondragon-Sanchez would be open to meeting new drug customers.

3. In February 2019, CS#1 told Mondragon-Sanchez about a prospective new drug customer. This potential new drug customer is CS#2. From February 2019 until present, Mondragon-Sanchez has regularly communicated with CS#2 about arranging drug transactions. Mondragon-Sanchez regularly changes his telephone number and has used several different telephone numbers to communicate with CS#2.

4. On June 25, 2019, Mondragon-Sanchez told CS#2 that a drug courier would be in Illinois that evening to deliver several kilograms of methamphetamine. Mondragon-Sanchez provided CS#2 with a telephone number to contact the drug couriers to make arrangements for the delivery. Later that evening, in a DEA controlled operation, CS#2 and an undercover DEA agent met with the drug couriers that were sent by Mondragon-Sanchez. The couriers gave CS#2 approximately 5.9 gross kilograms of suspected methamphetamine.

5. The next day, June 26, 2019, agents conducted surveillance of the couriers that delivered the 5.9 gross kilograms of suspected methamphetamine. DEA Task Force Officers conducted a traffic stop of the vehicle the couriers were driving. The two couriers were identified as Otto Tejeda and Joseph Otzoy. CS#2 and the undercover DEA agent later identified

3

6

photographs of Otzoy and Tejeda as the drug couriers who delivered the suspected methamphetamine on June 25, 2019.

6. On July 19, 2019, at approximately 1:15 p.m., at the direction of agents, CS#2 made a consensually recorded video call to Mondragon-Sanchez on WhatsApp. During this call, CS#2 was able to see Mondragon-Sanchez's face and also verified that the person's voice was the same person with whom he had been speaking to arrange the prior drug delivery. After the call, agents downloaded the video recording and could see that the person using the telephone appeared to be Mondragon-Sanchez based on comparison to his known driver's license photo. Agents showed CS#1 a still image from the video recording and CS#1 also confirmed it was Mondragon-Sanchez in the photograph.

7. At approximately 1:29 p.m., CS#2 had a consensually recorded telephone call with Mondragon-Sanchez. Mondragon-Sanchez said he was sending a courier to deliver approximately 11 kilograms of methamphetamine to CS#2 and to collect the money for the previous delivery of methamphetamine on June 25, 2019. Mondragon-Sanchez said the courier would be able to meet CS#2 in a few days. Mondragon-Sanchez and CS#2 agreed that CS#2 would meet the courier on July 22, 2019. CS#2 said based on his/her conversations with Mondragon-Sanchez, he/she thought Mondragon-Sanchez was sending the same couriers (Tejeda and Otzoy).

8. On July 21, 2019, Mondragon-Sanchez talked to CS#2 and told him that the couriers were near CS#2 and would be arriving soon. On July 22, 2019, CS#2 had consensually recorded telephone calls with Tejeda using the same telephone number that Tejeda used for the previous delivery. Tejeda asked CS#2 to meet him at the Holiday Inn in Troy, Illinois. CS#2

4

7

Case 3:19-mj-07084-MAB   Document 1   Filed 07/23/19   Page 5 of 6   PageID 5

told **Tejeda** that he/she was arriving at the hotel. Agents observed **Tejeda** and **Otzoy** walk out of the hotel carrying luggage and walk toward their parked car and open the trunk. Agents then identified themselves and apprehended **Tejeda** and **Otzoy**. Agents located a bag in the trunk of the vehicle that contained approximately 11.2 gross kilograms of suspected methamphetamine.

9. **Otzoy** was advised of his Miranda Rights and agreed to speak with agents in an audio/video recorded interview. **Otzoy** admitted to delivering drugs to CS#2 on June 25, 2019 and admitted that there were drugs in a bag in the trunk of the car. **Otzoy** said he did not know the amount or type of drugs involved. **Otzoy** said **Tejeda** was in charge of the acquiring the drugs and making the deliveries. **Otzoy** said **Tejeda** is working for a Hispanic male that he calls "Fabio" who is in charge of arranging the deliveries. **Otzoy** said he has seen "Fabio" one time. **Otzoy** identified a photograph of **Mondragon-Sanchez** as the person that he knows as "Fabio."

10. **Tejeda** was advised of his Miranda Rights and agreed to speak with agents in an audio/video recorded interview. **Tejeda** said that he knew there were drugs in the bag that was found in the trunk of the car. **Tejeda** said he did not know who or how the drugs got there. **Tejeda** said he was in communication with someone in California who was directing him to deliver the drugs. **Tejeda** was unable to identify a photograph of **Mondragon-Sanchez** as the person who was coordinating the drug deliveries; however, he was willing to make a telephone call to that person. The phone number that he called was the same phone number on which **Mondragon-Sanchez** had been communicating with CS#2.

11. All of the suspected methamphetamine was seized and sent to the DEA laboratory for analysis. To date, agents have not received an analysis of the drug. However, based on Agents' training and experience, the suspected crystal methamphetamine appeared consistent with

8

crystal methamphetamine seized during prior investigations.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Ryan Bandy
Special Agent
Drug Enforcement Administration

State of Illinois      )
                       )  SS.
County of St. Clair    )

Sworn to before me, and subscribed in my presence on the 23rd day of July, 2019, at

East St. Louis, Illinois.

Mark A. Beatty  2019.07.23 11:48:47 -05'00'
_____
MARK A. BEATTY
United States Magistrate Judge

STEVEN D. WEINHOEFT
United States Attorney

_____
AMANDA FISCHER
Assistant United States Attorney

6

9